Conner & Gatch *vs.* The Mount Vernon Co.

(Decided June 1st, 1866.)

George M. Conner and Conduce Gatch *vs.* The Mount Vernon Co.

Evidence—Admissibility of: Admissions: Prayers and Instructions to the Jury.—In an action of *assumpsit*, based upon a contract to construct water wheels, guarantied to be of from twenty to one hundred and ten horse-power, and to save a certain amount of water, it was proved by the plaintiff, that the wheels were put in place and connected with the machinery to be driven, and that their power reached the *maximum* called for by the contract; and evidence on the other side was admitted without objection, that the wheel, for which these were substituted, was of eighty-five and seven-tenths horse-power, and sufficient to drive all the machinery of the mill, and that the new wheels were insufficient for that purpose. A paper was then offered in evidence by the defendants, containing calculations made by one of the plaintiffs, of the power of the displaced wheel with a full head of water, which was objected to as inadmissible.—Held:

1st. That this evidence being offered generally, if it was admissible for any purpose, there was no error in admitting it.

2nd. That it was admissible in connection with other evidence of the same character, offered for the purpose of showing that the contract had not been performed.

3rd. That it was admissible as an admission by one of the plaintiffs of a fact of which evidence had been introduced without objection.

4th. It was admissible to show the actual power of the displaced wheel, and by that means enable the jury to judge whether the new wheels worked with the power guaranteed by the contract.

5th. That prayers limiting the jury, in passing upon the question of the performance of the contract, to a consideration of the plaintiffs' evidence alone, were properly rejected.

APPEAL from the Superior Court of Baltimore city:

The appellants, as plaintiffs below, brought an action of *assumpsit* based upon the following contract:

"Baltimore, Sep. 5th, 1860.

"This Article of Agreement, entered into this day between G. M. Conner, C. C. Gatch, of the city of Baltimore, Md., of the first part, and the Mount Vernon Cotton Manufacturing Company, of the same place, of the second part, witnesseth: that the parties of the first part, (viz: Conner & Gatch,) agree to construct and place in good running order two of the said Conner's Centripital Momentum Water-wheels, in the said company's cotton mill; and the power of the two wheels to be communicated to the driving-shaft to which the steam-engine is now attached, by means of a line shaft and spur-gearing. All the work, both wood and iron, to be made in the most substantial and durable manner, and placed in good running order, with all the necessary appurtenances and fixtures, and guaranteed to work from twenty to one hundred and ten horse-power, with a full head of water, and to effect a saving of 20 per cent., or one-fifth of the water over the over-shot that was in. The work to be completed and in running order on the 12th of October, 1860, unless circumstances over which the parties of the first part have no control should prevent. And the said parties of the first part agree to pay the company five dollars per day for every day after the 12th of October in which the work is not completed.

And the said company agree to pay said Conner & Gatch five dollars per day for every day in which the wheels running and driving the mill before the 12th of October. And the said parties of the second part agree to remove the old wheel, and when the two centripetal wheels shall work and perform, according to the guarantee in this Article of Agreement, then the said company will pay the said Conner & Gatch the sum of one thousand seven hundred and forty dollars, current money.—$1,740.00.

Wm. Kennedy, Pres't Mt. Vernon Co.<br>G. M. Conner.	C. Gatch."

There were eight counts in the declaration. Six were the common counts, and the seventh was an account stated. To these counts, pleas of denial were filed, and issues joined; but no question arose on those issues, at the trial. The eighth count of the declaration was met by two pleas; the ninth, concluded with a verification, to which there was a rejoinder and issue; and the tenth, concluded to the country, and issue thereon. The eighth count of the declaration alleged an agreement in writing, between the parties, dated 5th of September, 1860, as above; that the defendant, in consideration promised to pay, &c.; averment of performance by the plaintiffs, and non-payment by the defendant, of $1740, the amount claimed.

The ninth plea, after stating that the work was not completed by the day limited, and that the plaintiffs were not prevented from completing the same within said time by any circumstances over which they had no control, pleaded a part of the contract (not set out in the declaration,) by which the defendant was "to pay five dollars additional per day for every day the work should be completed, before said limited day, and that the plaintiffs should and would pay five dollars per day for every day after said 12th of October, 1860, during which, the said work had not been completed before said

limited day, nor since; and the defendant claims a large amount as due by the plaintiffs for stipulated damages."

The tenth plea specially denies that the wheels worked and performed according to the guarantee set forth in said eighth count, and denies that said wheels were competent and sufficient to work up to the power and to effect the saving of water, mentioned in said eighth count.

The plaintiffs under a commission to St. Louis, took the testimony of William H. Shock; and under a commission to Paita, in South America, took the evidence of Alfred Duvall. These two witnesses testify to certain experiments made by them in order to report on the efficiency of two of Conner's Centripetal Momentum Water-wheels, at the defendant's factory. They were employed for the purpose by the plaintiffs.

Shock, in his answer to the 2nd interrogatory, states that he is an engineer in the U. S. Navy, and familiar with steam machinery, and the mode of calculating results, connected therewith. From his answer to the 5th interrogatory he shews, that (instead of seeing whether the wheels, unassisted by the engine, could work the mill,) he adopted the mode of making experiments in two ways; firstly, when the engine was developing its maximum power, unassisted by the water-wheels; and, secondly, when the engine was reduced to its minimum performance, and the wheels were developing their maximum effect.

Duvall, in his answer to the 5th interrogatory, says, that he measured the water in the flume or forbay, being furnished, as he says, with a surface float of the most desirable form, and with a well constructed float, reaching to within five or six inches of the bottom of the flume. He then details experiments made, and calculations made thereon, and arrives at the conclusion that scientifically, there is a saving, by the use of Conner's wheels, of more than thirty per cent., as

compared with an over-shot wheel, using a fall of twenty and a half foot. (He gives no information as to the actual saving, by the use of Conner's wheels, as compared with the over-shot wheel, which was in the defendant's factory, when Conner's wheels were substituted.) The plaintiffs proved, by Hazelhurst, that he considered the mode adopted by Shock to ascertain the horse-power of the engine, to be a correct mode; and by Denmead, that he was present when the experiments were made by Shock and Duvall, and he thought they were fairly made. He testifies that, on one occasion, he was at the factory, and saw both wheels going, and that the pressure on the engine was only four and a half pounds, and that such machinery as was in operation was kept going by the wheels. Another witness, Moss, one of the plaintiffs' workmen, was examined on the part of the plaintiffs, to explain the reason of delay in putting in the wheels. Richard Shock, also examined on the part of the plaintiffs, proved, that he had put in the over-shot, which preceded Conner's wheels, and that it was an eighty horse power. He also testified, that Carroll, (the defendants' agent,) after Conner's wheels had been put in, spoke of them as doing very well; but with some qualification, either as to having more wheels, or some improvement.

The defendant proved by Poole, of the firm of Poole and Hunt, mechanical engineers, that he considered a horse-power, as forty-four thousand pounds; and that it is proper to deduct one-fifth for friction; and that the friction is nearly the same, whether the engine is exerting its *maximum* or *minimum* power.

Carroll, the defendants' agent, testified that he had built the Mount Vernon Mill; that the over-shot wheels, used before Conner's wheels were put in, afforded sufficient power to drive the entire machinery. The defendant had, also an eighty horse-power engine, which was used when the water was low.

Alterations were made in the machinery of the mill, after it had been built, but no addition. After Conner's wheels were put in, although the head of water was sufficient, they would not drive the mill. The plaintiffs took out those wheels; and made a change; and then another, and then another, but the wheels would not drive the mill. They would not do more than two-thirds of the work of the old one.

They kept on making these changes up to January, 1861. The company never accepted the wheels; witness was present when Shock and Duvall made their experiments, and suggested to them that the true way was to try the wheels by themselves, but they did not act upon his suggestion.

Kavanaugh, a witness for the defendant, proved that the plaintiffs had put in one of Conner's wheels at the Calverton Carpet mills, and that it did not do half the work of the over-shot wheel with the same water.

The defendants also proved the following facts:

By Cornelius, the engineer at the Mount Vernon factory since 1852, that the new wheels would not drive more than from one-half to two-thirds of the machinery; and that the old over-shot wheel drove the whole mill. This witness also proved, that when Denmead saw but four and a half pounds of steam on the engine, but half the machinery was in operation.

By Smith, the general superintendent since 1849, that the over-shot wheel drove all the machinery; that the new wheel did not drive more than half. There are four rooms in the mill; the new wheels drove only two rooms.

At this stage of the cause, a paper was offered by the defendant, containing calculations made by Conner, one of the plaintiffs, of the power of the over-shot wheel with a full head of water. To the reading of this statement, or calculation, the plaintiffs

Conner & Gatch *vs.* The Mount Vernon Co.

objected. It was admitted by the Court. This formed the plaintiffs' 1st exception.

The defendant also proved by Thompson, that he had made a calculation of the power of the over-shot wheel, and found it to be 85.7 horse-power, and that an over-shot wheel uses from 65 to 70 per cent. of water. And also proved by Wood & Kelly, that they had been connected with the defendant's mill for nine years, and that it could and did run the entire machinery, and that the present wheel run but half.

The evidence on both sides being closed, the plaintiffs by their counsel prayed the Court to instruct the jury as follows :

1st. That by the terms of the contract which had been offered in evidence, the plaintiffs undertook to furnish the defendants with two of Conner's Centripetal Momentum. Water-wheels, having ability to work from twenty to one hundred and ten horse-power, with a full head of water, and to effect a saving of twenty per cent, or one-fifth of the water of the over-shot wheel that was then in the defendants' mill. And if the jury shall believe from the evidence that the term horse-power is used among engineers and mechanics to describe a standard by which to measure motive power, which there are well known rules and methods for calculating; and if the jury shall believe that the plaintiffs did in fact furnish two of Conner's Centirpetal Momentum Water-wheels, and communicated their power to the driving shaft of the defendants' engine, by means of a line shaft and gearing as provided in said contract; and if the jury shall. further believe, that after the said wheels were so as aforesaid furnished and connected, the said plaintiffs caused the horse-power thereof to be calculated by the rules and methods aforesaid, while the said wheels were in operation, communicating their power to the driving shaft aforesaid, and that such calculations were fairly and *bona fide* made from data of the taking of

Conner & Gatch *vs.* The Mount Vernon Co.

which the defendants or their agents had notice, by parties skilled and competent to make them, and which calculations have been offered in evidence; and that the result of such calculations was to show that the amount of horse-power guaranteed in the said contract, has been obtained along with the saving of water stipulated therein:—then in the absence of all testimony to shew that such calculations were erroneous, the jury must find for the plaintiffs, even though the jury should not be satisfied that the said wheels were competent to do the work performed by the old wheel that preceded them, and which has been spoken of in evidence, and although they should believe that it was the intention of the defendants that the new wheels should drive the whole machinery of the said mill, and that they failed to do so.

2nd. That in order to show that the calculations referred to in the first prayer are erroneous, the defendants must show that the data on which they were made were incorrectly taken, or that the rules applied thereto were not those applied by persons familiar with the calculation of horse-power of motive machinery.

3rd. That if the jury shall believe that the delay in completing the said wheels by the time stipulated in the contract, was occasioned by circumstances beyond the control of the plaintiffs, then they are not to be subjected to the penalty of five dollars per day mentioned in the contract.

4th. That the penal clause of the contract is distinct from that stipulating for the payment of a certain sum for the two wheels as aforesaid; and that, should the jury find that the plaintiffs are subject to any penalty under the circumstances of this case, they will further find for the plaintiffs the contract price less such payment on account thereof as is admitted in evidence, and after deducting the amount of penalty, if any, from the balance, under their credit for the plaintiffs, with interest from the time when they ceased to work on the said wheels.

5th. That in determining whether the wheels in question worked up to one hundred and ten horse-power, and effected a saving of twenty per cent. over the over-shot wheel therein, the jury are not bound by the fact, should they find it, that the wheels were not able to drive the machinery of the mill, provided, the jury shall find that the said wheels possessed the horse-power indicated in the contract, and effected the saving of water mentioned therein, as the same calculated or measured by the rules and methods for ascertaining horse-power, in use among persons skilled and competent to make such measurements and calculations; and provided, the jury shall also find that horse-power is a term used among engineers and mechanics, to describe a standard by which to measure motive power, which, there are well known rules and methods for calculating.

The defendants prayed the Court to instruct the jury as follows:

1st. That by the terms of the contract offered in evidence, the plaintiffs cannot recover, unless the jury shall find from all the evidence in the cause that the wheels constructed by the plaintiffs with their appurtenances and fixtures as arranged by the plaintiffs, were able, when employed by the defendants in running and driving their mill, to work up to one hundred and ten horse-power, with a full head of water, and were capable of effecting a saving of 20 per cent. of water over the over-shot wheel that was previously in use, and that the burthen of proof is on the plaintiffs to establish said facts.

2nd. Even if the jury should find that the two wheels constructed by the plaintiffs, with their appurtenances and fixtures, were able to work up to one hundred and ten horse-power, and were capable of effecting a saving of 20 per cent. of water, but shall also find that said work was not completed on or before the 12th day of October, 1860, and that the plaintiffs were not prevented from completing the same on

or before said day, by circumstances over which they had no control, then the defendant is entitled to a credit of five dollars for each and every day during which said work remained not completed, after the said 12th day of October, 1860.

The Court, (MARTIN, J.,) rejected the plaintiffs' 1st, 3rd, 4th, 5th and 6th prayers, and granted the 2nd prayer of the plaintiffs, and granted the prayers of the defendants; and to the refusal of the Court to grant the rejected prayers of the plaintiffs, as well as to their granting the defendants' prayers, the plaintiffs by their counsel excepted, and the verdict and judgment being for the defendants, appealed.

The 6th prayer of the plaintiffs called for in the 2nd bill of exceptions was omitted in the record of the case.

It was agreed that counsel should, in arguing the case before the Court of Appeals, read from Haswell's Engineers' Pocket-book, the Steam Engine by the Artizan Club, and the Ordinance Manual, as though the parts read were extracted and inserted in the record.

*John H. B. Latrobe,* for the appellants :

The whole matter in dispute turns upon the construction proper to be given to the above contract.

The difference between the constructions contended for, respectively, by the appellants and appellees, is substantially this : The appellants insist that, if their wheels furnished the horse-power and saved the water mentioned in the contract, they complied with their guarantee, whether they drove the whole machinery of the mill or not.

The appellees, on the other hand, contend that according to the terms of the contract, the fact, that the wheels did not drive the whole machinery of the mill, was evidence, from which the jury might find a non-compliance with the guarantee. This difference appears in the instructions prayed

for and rejected on the one hand, and those granted on the other.

Thus, the Court left it to the jury to say, whether, from all the evidence in the cause, the wheels were able, " when employed by the defendants in running and driving their mill," to furnish the horse-power, and effect the saving of water mentioned in the contract.

Now, the evidence on this point, as appears from the record, was confined, on the part of the appellee, to showing, that the wheels did not drive the entire machinery.

No evidence was offered by the appellee to prove that one hundred and ten horse-power was not furnished, or that a saving of 20 per cent. of water was not effected, except that the whole machinery was not, in fact, driven.

On the contrary, after showing that horse-power was a technical term, well understood among machinists and others, the appellants proved that the wheels furnished it, and as a matter of fact, proved that there was the saving of water which the contract guaranteed, nor was any witness offered to impugn the accuracy of the calculations, or the principle on which these results were arrived at.

And the appellants contend, that the first prayer of the defendants was improperly granted, because it permitted the jury to make the driving of the whole machinery the test of compliance with the guarantee of the contract—whereas the contract contains not one word having reference to such a standard—but, on the contrary, establishes one well understood, and which the appellants are proved to have complied with.

The appellees seem to have made up their mind as to what horse-power they required to drive their mill.   Using a steam engine already, they are to be presumed to have known what the term horse-power meant—they fixed upon one hundred and ten horse power as sufficient—it was fur-

nished them—it turns out to have been insufficient—and their refusal to pay the appellants is an attempt to visit them with the consequences of the appellees' own mistake.

Had the appellees intended a guarantee to drive the whole machinery, nothing would have been easier than to insert it. They preferred another standard however.

It is very true that, towards the close of the contract, "the company (the appellees) agree to pay the said Conner and Gatch, five, dollars per day for every day in which the wheels running and driving the mill, before the 12th October."

When the contract was made, the appellees assumed that one hundred and ten horse-power would drive the mill, and when the "running and driving the mill" is spoken of, as above, it is in reference to this calculation to this effect.

As the case now presents itself, the second prayer of the appellees becomes unimportant.

Among the testimony admitted by the Court below, was a statement or calculation made by one of the plaintiffs of a date prior to the contract. It is objected to, because there was no ambiguity about the contract, which it could be invoked to explain; and again, admitting even that it was exhibited to the appellees before the contract was made, it was superseded by that instrument when subseqently exe-cuted.

And the appellants contend, that the 1st, 3rd, 4th and 5th prayers of the defendants were improperly rejected, for the reasons that have been urged in contending that the appel-lees' first prayer was improperly granted.

*Wm. Schley,* for the appellees:

1. The evidence stated in the 1st bill of exceptions was properly admitted; it was the work of one of the plaintiffs; it was material and pertinent to the issue; it must stand on the same footing as an admission or representation of the plaintiffs.

2. The plaintiffs' first prayer boldly presents the proposi-tion, that, in construing the contract, we are to understand the clause "to work from twenty to one hundred and ten horse-power," as importing theoretical, and not practical, power; and that we are also to understand the clause, "to effect a saving of twenty per cent., or one-fifth of the water over the over-shot that was in," in the same way.

The appellee insists, that upon the true exposition of the contract, the parties intended real working power, and an actual saving of one-fifth of the water. The wheels were in-tended for practical use.

3. If the last point be well taken, then both the first and fifth prayers of the plaintiffs were properly rejected. Both concede, that the wheels did not, in fact, furnish the horse-power, or saving of water, guaranteed by the plaintiffs; and both seek to introduce calculations as a substitute for reality. The first prayer of the appellee announces the true and only sensible interpretation.

4. The construction of the contract being settled, the law is clear, that the plaintiffs could not recover, unless upon satisfactory proof that the wheels did furnish the power, and did save the water, as guaranteed by the plaintiffs in the agreement. Knowing this, the 8th count avers performance; and the right of recovery is thus dependent on proof of per-formance. *Watchman & Bratt vs. Crook*, 5 *G. & J.*, 254. *Watkins vs. Hodges & Langsdale*, 6 *H. & G.*, 38. *Speake vs. Shepard*, 6 *H. & J.*, 85. *Bank of Columbia vs. Hay-ner*, 1 *Peters*, 465. *Whilcher vs. Hall*, 11 *Eng. C. L. Rep.*, 224. *Sinclair vs. Bowles*, 17 *Eng. C. L. Rep.*, 340.

5. The 2nd prayer of the appellee did not make time of the essence of the contract, so far as related to the plaintiffs' right of action. But that prayer affirmed, that by the terms of the contract, the defendant was entitled to a credit of five dollars for each and every day during which the work was

unfinished after the 12th day of October 1860, in case the jury should find that the plaintiffs were not prevented from finishing the work, on or before that day, by circumstances, over which they had no control. *McIntosh vs. The Midland Counties Railway*, 14 *Mees. & Welsby*, 548. And such deduction is properly to be made in this suit, and a cross-action is not necessary. *Van Buren vs. Digges*, 11 *How.*, 461. *Withers vs. Green*, 9 *How.*, 213, 227, 231. *Gibbon's Law of Contracts*, § 20 to § 47.

6. The plaintiffs' third prayer was properly rejected. That prayer transfers the provision, which is annexed to the engagement, that the work shall be completed and in running order on the 12th of October, 1860; which would be a condition precedent to a right of payment for the work, but for the superadded words, "unless circumstances, over which the parties of the first part have no control, should prevent," had been added. Without those words, time would have been so far of the essence of the contract, that the plaintiff could not have recovered at all, unless the work should have been completed and in running order by said day. But although time was not made an absolute condition precedent to a right of recovery,—as in 5 *G. & J.*, 254, and cases of that class; yet, as a *bonus* for expedition, five dollars was to be paid additional for every day the work should be completed, in advance of that day; five dollars was to be paid as stipulated damages for every day of delay. Whether called a penalty or stipulated damages, it is a fixed compensation for delay, which the defendant was bound to accept in full, and which the plaintiffs were bound to pay. There is no qualification to this part of the agreement, nor can any be engrafted on it.

7. The plaintiffs' 4th prayer was properly rejected. The defendant had paid in advance a part of the price, as was admitted, leaving a balance of the contract price. The defendant plead as a set off, the amount due by the plaintiffs

Conner & Gatch *vs.* The Mount Vernon Co.

in bar. Now this prayer incorporates "the circumstances" in the same objectionable manner as was done in the 3rd prayer. But it goes further, and asks for a positive direction to the jury to find for the plaintiffs,—to render their verdict for the plaintiffs, on a prescribed basis; and with interest from the time the plaintiffs ceased to work. Such an instruction would exclude from the consideration of the jury, the question whether the work was ever completed or not; whether the work,—all the work, both wood and iron,—had or had not been made "in the most substantial and durable manner;" whether it had or had not been placed in good running order, with all the necessary appurtenances and fixtures; whether the wheels did or did not work from twenty to one hundred and ten horse-power with a full head of water; and whether they did or did not effect a saving of twenty per cent., or one-fifth of water, over the over-shot that was in at the time the contract was made; and also excluded the enquiry, whether the work was completed and in running order by the day limited, and if not, whether the delay was owing to circumstances over which the plaintiffs had no control. All these were questions material to the question of the plaintiffs' right to recover at all.

GOLDSBOROUGH, J., delivered the opinion of this Court:

This suit was brought on a contract to construct two Centripetal Momentum Water-wheels and properly connect them with the machinery of a Cotton Mill. These wheels were to take the place of an over-shot wheel then used in driving the mill, and in the language of the contract, were "guaranteed to work from twenty to one hundred and ten horse-power with a full head of water, and to effect a saving of twenty per cent. or one-fifth of the water of the over-shot that was in." Another clause of the contract shows that the contracting parties contemplated the construction of wheels that

should be sufficient to run and drive the machinery of the mill.

After the admission of proof on the part of the appellants that the wheels were put in place and connected with the machinery to be driven, and that their power reached the *maximum* called for by the contract, evidence was admitted on the other side, without objection, showing that the displaced over-shot wheel was of eighty-five and seven-tenths horse-power with a full head of water, and sufficient to drive all the machinery of the mill; and further, that the new wheels, with a like head of water, were wholly insufficient for that purpose. The written computation of the power of the over-shot wheel, made by Conner one of the appellants, and to the admission of which, the first exception was taken, was then allowed by the Court to be read in evidence. The paper appears to be appended to, or to be part of a paper endorsed " Proposals," which the appellants insist was merged in the contract subsequently made, and for that reason was not admissible as evidence in an action on the contract.

The appellants assume, as the ground of their objection, that this paper tended to vary the contract for the construction of the new wheels, and it must be conceded that if it was offered for that purpose, the objection would be fatal.

The specific purpose for which this evidence was offered is not stated in the bill of exceptions—being offered generally, if it was admissible for any purpose, there was no error in admitting it.

It was certainly admissible in connection with other evidence of the same character, for the purpose of showing that the contract had not been performed; and in that view there was no error in admitting it. It contained the calculation of the capacity or power of the over-shot wheel, made by Conner himself; and as an admission by Conner of this fact, of which proof by the estimate of other witnesses was intro-

Conner & Gatch *vs.* The Mount Vernon Co.

duced without objection. It was admissible to show the actual power of the over-shot wheel, and by that means enable the jury to judge whether the new wheels worked with the power guaranteed in the contract.

A review of the prayers granted and rejected, contained in the second exception, has satisfied us that the cause was submitted to the jury under proper instructions.

The right of recovery depended upon the performance of the contract; and the rejected prayers offered by the appellants appear to have been founded on a construction of it that necessarily limited the jury in passing upon the question of its performance to a consideration of their evidence alone.

This, in our opinion, was a mistaken theory, not only as to the meaning of the contract, but in regard to the evidence from which its performance was to be found.

The question of performance was to be determined by the jury upon a consideration of all the evidence in the case.— As we understand the contract, the instructions given were as favorable as the appellants had a right to ask; they are expressed in the language of the contract, or at least so nearly so, that the only mistake the jury could make, was in the way of construing them in the appellants favor. The judgment must be affirmed.

*Judgment affirmed.*

(Decided June 1st 1866.)